IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

LEWIS AND BETTY PEACOCK, )
)
    Plaintiffs, )
v. ) NO. 3:06-0703
) JUDGE HAYNES
PACE INTERNATIONAL UNION )
PENSION FUND PLAN, PACE )
INDUSTRY 401(k) PLAN and )
SUCCESSION OF ALICE L. PEACOCK, )
)
    Defendants. )

**MEMORANDUM**

Plaintiffs, Lewis and Betty Peacock filed this action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 et seq. seeking declaratory judgment and injunctive relief against PACE International Union Pension Fund Plan ("Pension"), PACE Industry 401(k) Plan ("401(k) or collectively "the Funds") and the Succession of Alice L. Peacock ("Succession"). The gravamen of Plaintiffs' complaint is that the Succession should not be entitled to claims against Lewis Peacock's pension and 401(k) plan because such benefits are exempt from consideration as community property under ERISA, and Boggs v. Boggs, 529 U.S. 833 (1997). In essence, Plaintiffs initiated this action to clarify their rights to future benefits under ERISA plans and to enjoin the Succession from claiming an interest in these benefits in a pending state court action in Louisiana. The Succession denies Plaintiffs' allegations and assert that Plaintiffs have failed to exhaust their administrative remedies.

Before the Court is Defendant, Earl Luneau's[1] motion to dismiss or alternatively, to transfer this action to Louisiana (Docket Entry No. 16), contending in sum: (1) Plaintiffs have

---

[1] Earl Luneau is acting on behalf of the Succession of Alice L. Peacock.

failed to state a claim under ERISA; (2) this action is barred by the Anti-Injunction Act; (3) the Court lacks personal jurisdiction over Luneau; and (4) if a claim exists, this action should be transferred to the Western District of Louisiana.

In response, (Docket Entry No. 25), Plaintiffs contend that: (1) the Anti-Injunction Act does not bar the declaratory and injunctive relief sought here; (2) Plaintiff Betty Peacock, Defendant PACE International Union Pension Fund Plan and Defendant PACE Industry 401(k) Plan are not parties to the Louisiana state action and are not barred by the Anti-Injunction Act; and (3) this Court has personal jurisdiction over Luneau and this action should not be transferred to the Western District of Louisiana.

For the reasons stated below, Court first concludes that this action arises under ERISA and is not barred by the Anti-Injunction Act. Second, the Court concludes that Plaintiffs' claim is properly before this Court because the plans in question are administered within the Middle District of Tennessee. Third, the Court has jurisdiction over the Defendant given ERISA's nationwide jurisdiction provision and his minimum contacts with the United States. Finally, the Court concludes that this action should remain in the Middle District of Tennessee as the plans are administered in this district.

## ANALYSIS OF THE RECORD

Lewis Peacock began his employment with PACE International Union on April 29, 1968. (Docket Entry No. 1, Complaint at ¶ 7). As part of his employment, Lewis Peacock received a PACE pension and 401(k) plan. Id. at ¶ 11. A little more than three years after beginning his employment with PACE, Peacock married Alice Luneau in Alexandria, Rapides Parish, Louisiana. Id. at ¶ 8. On August 16, 2001, after nearly 30 years of marriage, Alice Peacock filed

2

for divorce and on May 6, 2002, a Judgment of Final Divorce was entered. Id. In August of that year, Alice Peacock filed a lawsuit in Rapides Parish, Louisiana, seeking to divide the community property she and her husband accumulated during the course of their marriage. Id. at ¶ 9. Alice Peacock died on June 7, 2003 before the partition proceedings had completed. Id.

In her last will and testament, Alice Peacock left her estate to her brother, Earl Luneau, named as executor and to her daughter, Angela Simpson. Id. and (Docket Entry No. 17, Memorandum in Support of Motion to Dismiss or in the Alternative, to Transfer, at p. 2). In early November, 2003, the 9th Judicial District Court of Rapides Parish, Louisiana granted the Succession of Alice L. Peacock's Motion to Substitute Luneau in place of Alice Peacock. Id.

On March 13, 2004, Lewis Peacock married Betty Gillam, and the two remain married. Id. at ¶ 10. As his wife, Betty Peacock is the joint and survivor beneficiary of Lewis Peacock's pension and 401(K) plans. Id. at ¶ 11. On October 14, 2005, the Succession filed an Amended and Supplemental Detailed Descriptive List of the Succession of Alice Peacock that claimed an entitlement to Alice Peacock's share of her ex-husband's pension and 401(K). Id. at ¶ 12. As his spouse, Alice Peacock would have been covered under her Lewis Peacock's plans, enjoying joint and survivor benefits. Id.

The Succession is requesting an accounting against the community property assets, including the actuarial calculated value of Alice Peacock's joint benefits from Lewis Peacock's pension and 401(K). Id. at ¶ 13. On November 9, 2005, Lewis Peacock filed a Traverse of Amended and Supplemental Sworn Detailed List of Succession of Alice Luneau Peacock stating that ERISA precludes Lewis Peacock's benefits from consideration as community property. Id. at ¶ 14. The action regarding the calculation of and entitlement to Lewis Peacock's pension and

3

401(K) is still pending in Louisiana. Id. Plaintiffs have filed this action to enforce their pension rights under ERISA to obtain injunctive relief from any claims of the Succession of Alice Peacock against Lewis Peacock's pension and 401(K). Id. at ¶ 15.

## CONCLUSIONS OF LAW

"[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Hartford Fire Ins. Co. v. California, 509 U.S. 764, 811 (1993). Consideration of a motion to dismiss requires the court accept the complaint's factual allegations as true and to construe the complaint liberally in favor of the plaintiff. Perry v. Am. Tobacco Co., Inc., 324 F.3d 845, 848 (6th Cir. 2003). Despite such liberal construction, a court "need not accept as true legal conclusions or unwarranted factual inferences." Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987) (internal quotation omitted). Indeed, "it is not . . . proper to assume that the [Plaintiff] can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." Assoc. Gen. Contractors v. Cal. State Counsel of Carpenters, 459 U.S. 519, 526 (1983). Moreover, to survive a motion to dismiss under Rule 12(b)(6), "the complaint must contain 'either direct or inferential allegations respecting all the material elements' " of the claim. Tahfs v. Proctor, 316 F.3d 584, 590 (6th Cir. 2003) (quoting Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 436 (6th Cir. 1988)).

For a majority of civil actions, the complaint is sufficient if it satisfies the "notice" pleading requirements of the Federal Rules of Civil Procedure with a "short and plain statement of the claim showing the pleader is entitled to relief," because generally "[n]o technical forms of pleadings or motions are required." Fed. R. Civ. P. 8(a)(2), (e)(1).

4

Of the Defendant's contentions, the Court addresses first his assertion that this Court lacks the jurisdiction to entertain this controversy. Thus from the outset, the Court must determine whether it has the power to hear this case.

## Subject Matter Jurisdiction

In his memorandum, Defendant Luneau contends that this action does not arise under ERISA and is barred by the Anti-Injunction Act, ("AIA"), 28 U.S.C. § 2283. The Peacocks argue that their action seeks to determine rights to future benefits under the civil enforcement provision of ERISA, 29 U.S.C. § 1132[2], and thus this Court is empowered to hear the controversy.

Although the Peacocks' complaint does not expressly state that its purpose is to enjoin the state court proceeding,[3] because the relief they seek would have the same effect, it must be analyzed under the AIA. See Martingale LLC v. City of Louisville, 361 F.3d 297, 303 (6th Cir.2004) (when the "declaratory relief would have the same practical effect as an injunction, the Anti-Injunction Act precludes the court from granting a declaratory judgment").

---

[2] (a) Persons empowered to bring a civil action
    A civil action may be brought--
        (1) by a participant or beneficiary--
            (A) for the relief provided for in subsection (c) of this section, or
            (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan...

[3] Plaintiffs seek: (1) a declaratory judgment enforcing Plaintiffs' rights under the employee pension and 401(K) plans governed by ERISA...; (2) a declaratory judgment of equitable relief under 29 U.S.C. § 1132(a)(3) that enjoins Defendants PACE International Union Pension Fund Plan and PACE Industry 401(K) Plan from reducing Plaintiffs' ERISA-covered employee pension and 401(K) benefits; (3) a declaratory judgment that enjoins Defendant, Succession, from claiming a share of Plaintiffs' ERISA-covered employee pension and 401(K) benefits... (Docket Entry No. 1, Complaint at p. 4).

For his argument that this action does not arise under ERISA, Luneau cites NGS American, Inc. v. Jefferson, 218 F.3d 519 (6th Cir.2000). The Plaintiffs respond that Luneau's analysis of NGS is overly broad. The Court agrees.

NGS arose when Jefferson, a beneficiary, filed a notice of intent to sue in Florida state court for medical malpractice to recover damages against a third-party administrator of an ERISA governed plan.[4] Id. at p. 521. Upon receipt of the notice of intent, and before Jefferson could legally file his state court action, NGS filed a federal action in Michigan seeking a declaration that 29 U.S.C. § 1144, ERISA's preemption provision, would preempt state law claims. Id. NGS relied on ERISA's nationwide service of process provision to establish personal jurisdiction over Jefferson, a Florida resident. Id. at p. 524. The Sixth Circuit interpreted NGS's actions to be "seek[ing] a federal forum for determination of the ERISA preemption issue in the underlying state-court case." Id. at p. 522. The Sixth Circuit ultimately held that seeking injunctive and declaratory relief against a state court tort action does not enforce ERISA's preemption provision. Id. at p. 525.

This action is distinguishable from NGS. To be sure, the NGS action involved a fiduciary suing a beneficiary, whereas the present action involves a beneficiary suing a potential claimant and ERISA plans. Further, the NGS plaintiff relied on the preemptive effect of § 1144 in its contention that federal jurisdiction was proper, not § 1132(a), as is the case here. As the Sixth Circuit stated:

> NGS asserts that personal jurisdiction exists by way of a nationwide service of process provision in the statute under which it brings its action. However, the

---

[4] Florida law requires a prospective plaintiff to notify the prospective defendant of his/her intention to initiate a medical malpractice suit. Fla. Stat. Ann. § 766.106(2)(a).

Case 3:06-cv-00703   Document 30   Filed 08/23/07   Page 6 of 20 PageID #: 126

action NGS has brought purports to enforce the preemption provision of that same statute. The § 1144 preemption provision itself does not create a federal cause of action.

Id. at 531. Thus, NGS tried to obtain personal jurisdiction under § 1144 that does not create a federal claim. Here, the Peacocks' § 1132(a) complaint states a cognizable federal claim.

The Peacocks action under § 1132(a) asks the Court to determine whether the Succession is entitled to any of Lewis Peacock's, and by extension, Betty Peacock's ERISA benefits. In NGS, the underlying action was one for medical malpractice, in which the defendant happened to be an administrator of an ERISA plan. In this instance, the underlying action directly affects the potential division of Lewis Peacock's assets, including his ERISA benefits. Thus, the holding in NGS simply is inapplicable here and the Court concludes that the Peacocks' action arises under ERISA.

To support his contention that the AIA bars this action, Luneau relies upon language in NGS stating: "we do not read ERISA's authorization of injunctive relief as expressly authorizing injunctions of state court proceedings", id. at 523 n..4, to mean that "ERISA's authorization of injunctive relief is not recognized as fitting within one of the narrow exceptions to the Anti-Injunction Act's otherwise blanket prohibition of injunctions of state court proceedings." (Docket Entry No. 17 at p. 5). Yet, in its totality, the footnote reads differently, as the same footnote states: "[t]o proceed, this action requesting injunctive and declaratory relief would have to fall under exceptions to both the Anti-Injunction Act and Younger v. Harris, 401 U.S. 37 (1971)." NGS, 218 F.3d at 523, n. 4. The Court finds that the clear meaning of this language is that there may be instances in which an action arising under ERISA can enjoin pending state court proceedings so long as the factual circumstances fall within the exceptions to the

7

application of the AIA and to <u>Younger</u> abstention. This conclusion requires an analysis of the AIA and <u>Younger</u> abstention.

## *Anti-Injunction Act*

The AIA provides: "[a] court of the United States may not grant an injunction to stay proceedings in a State court except: (1) as expressly authorized by Act of Congress; or (2) where necessary in aid of its jurisdiction; or (3) to protect or effectuate its judgments." 28 U.S.C. § 2283. "On its face the [AIA] is an absolute prohibition against enjoining state court proceedings, unless the injunction falls within one of the three specifically defined exceptions." <u>Mitchum v. Foster</u>, 407 U.S. 225, 229 (1972) (quoting <u>Atlantic Coast Line R. Co. v. Brotherhood of Locomotive Engineers</u>, 398 U.S. 281, 286 (1970)). "[A]ny injunction against state court proceedings otherwise proper under general equitable principles must be based on one of the specific statutory exceptions to § 2283 if it is to be upheld..." <u>Id.</u> (quoting <u>Atlantic Coast Line R. Co.</u>, 398 U.S. at 287).

> The AIA's purpose is to avoid potential discord between the state and federal courts.
>
> In adopting the Act, Congress sought to avoid "the inevitable friction between the state and federal courts that ensues from the injunction of state judicial proceedings by a federal court." <u>Vendo Co. v. Lektro-Vend Corp.</u>, 433 U.S. 623, 630, 97 S.Ct. 2881, 53 L.Ed.2d 1009 (1977). By its own language, however, the Act does not entirely bar federal courts from enjoining state court proceedings. Rather, the Act enumerates three narrow exceptions to its otherwise blanket prohibition. The exceptions were designed to "ensure the effectiveness and supremacy of federal law," <u>Chick Kam Choo v. Exxon Corp.</u>, 486 U.S. 140, 146, 108 S.Ct. 1684, 100 L.Ed.2d 127 (1988), but are narrow in their application and "should not be enlarged by loose statutory construction." <u>Atlantic Coast Line R. Co.</u>, 398 U.S. at 287.

<u>Hatcher v. Avis Rent-A-Car System, Inc.</u>, 152 F.3d 540, 542 (6th Cir.1998).

First, Plaintiffs contend that the AIA is inapplicable because their cause is "expressly

8

authorized by Act of Congress." In Mitchum v. Foster, 407 U.S. 225 (1972) the Supreme Court formulated the test to determine whether the "expressly authorized by Congress" exception to the AIA applies to a particular situation. Mitchum noted that the statute in question need not explicitly refer to injunctions of state court proceedings, but stated: "[t]he test, rather, is whether an Act of Congress, clearly creating a federal right or remedy enforceable in a federal court of equity, could be given its intended scope only by the stay of a state court proceeding." 407 U.S. at 238.

The Mitchum analysis is two-fold: first, whether an Act of Congress creates a federal right or remedy enforceable in federal court, and second, whether that Act could be given its intended scope only by a stay of state court proceeding. See General Motors Corp. v. Buha, 623 F.2d 455 (6th Cir.1980). Through the express preemption language in §§ 1144[5] and 1132(e)[6], and the Sixth Circuit precedent in General Motors, the Court concludes that ERISA meets the

---

[5] (a) Supersedure; effective date

Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title. This section shall take effect on January 1, 1975.

29 U.S.C. § 1144(a).

[6] (e) Jurisdiction

(1) Except for actions under subsection (a)(1)(B) of this section, the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by the...beneficiary... State courts of competent jurisdiction and district courts of the United States shall have concurrent jurisdiction of actions under paragraphs (1)(B) and (7) of subsection (a) of this section.

29 U.S.C. § 1132(e)(1)

9

first prong of the Mitchum test in that it does create a federal right or remedy enforceable in federal court.

In General Motors the Sixth Circuit applied the Mitchum test to ERISA and concluded that ERISA falls within the "expressly authorized by Congress" exception. In General Motors the plaintiff attempted to collect on a judgment by garnishing the debtor's General Motors pension plan. Id. at p. 457. A writ of garnishment was served on the trustee of the General Motors pension fund, upon which the trustee filed a disclosure of non liability to the debtor. Id. General Motors filed an action in the district court to prevent enforcement of the writ of garnishment. Ultimately, a permanent injunction was issued predicated upon irreparable injury due to the prevention of the fiduciary of carrying out its duties. Id. The creditor appealed the permanent injunction to the Sixth Circuit. Id. at p. 455. The Sixth Circuit held:

> We conclude that ERISA meets both prongs of the Mitchum test. When a district court finds that an action in a state court will have the effect of making it impossible for a fiduciary of a pension plan to carry out its responsibilities under ERISA, the anti-injunction provisions of § 2283 do not prohibit it from enjoining the state court proceedings.

623 F.2d at 459. (citations omitted).

In so concluding, General Motors cited to the legislative intent of ERISA as described by Representative Dent, Chairman of the Subcommittee on Labor of the House Committee on Education and Labor:

> [T]he crowning achievement of this legislation, [is] the reservation to Federal authority the sole power to regulate the field of employee benefit plans. With the preemption of the field, we round out the protection afforded participants by eliminating the threat of conflicting and inconsistent state and local regulation.
> 120 Cong.Rec. 29197 (1974).

Id.

After giving appropriate weight to considerations of federalism and comity, the Sixth Circuit upheld the district court's injunction, id. at 459. The court distinguished cases requiring abstention and also considered that the state court could not have heard the fiduciary's claims.

> However, the state court proceedings which were enjoined in the present case were not criminal (Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971)) or akin to criminal (Huffman v. Pursue, Ltd., 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975)) and did not involve the integrity of the state's judicial processes (Juidice v. Vail, 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977)). Further, GM was not a party to the state court proceedings and could not have initiated an action in state court in its fiduciary capacity because of the preemption provision of 29 U.S.C. s 1132(e), supra. Thus abstention would not have been required on the ground that GM could have tendered its federal claim in a single state court proceeding. See Trainor v. Hernandez, 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977); Moore v. Sims, 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979).

Id.

Here, as in General Motors, the parties in this action are not identical to the parties in the state court action. The Pension and the 401(K) plans are not parties in the Louisiana state court and thus, cannot ensure that their positions are represented in that proceeding. As the Pension and 401(K) stated: "[T]he Funds are not a party to the case currently pending in Louisiana state court, and therefore cannot protect their interest in seeing that the facts and law are correctly applied to them." (Docket Entry No. 23 at p. 1). In addition, the Pension and 401(K) contend that they could be put into a situation where they have to "comply with two potentially conflicting court orders with respect to entitlements to the subject benefits" id. at pp. 1-2, rendering it impossible for the fiduciaries to perform their duties responsibly.

As in General Motors, the funds cannot initiate an action in state court because of ERISA's preemption. Based on the General Motors case and ERISA's legislative intent, the Court concludes that in this action, ERISA falls within the "expressly authorized by Act of

11

Congress" exception to the AIA.[7]

### *Younger* Abstention

Under certain circumstances, a district court must consider abstention from determining a controversy that has a related state court action. As stated in NGS, "[t]o proceed, [a federal] action requesting injunctive and declaratory relief [of a state court action] would have to fall under exceptions to both the Anti-Injunction Act **and** Younger v. Harris, 401 U.S. 37 (1971)." NGS, 218 F.3d at 523, n. 4 (emphasis added).

In Younger, the Supreme Court held that absent a showing of "bad faith, harassment or any other unusual circumstance," a federal court should abstain from enjoining a state criminal proceeding. Younger, 401 U.S. at 53-54. Later, the Supreme Court explained: "[t]he policies underlying Younger are fully applicable to noncriminal judicial proceedings when important state interests are involved." Middlesex County Ethics Committee v. Garden, 457 U.S. 423, 432 (1982) (citing Moore v. Sims, 442 U.S. 415, 423 (1979); Huffman v. Pursue, Ltd., 420 U.S. 592, 604-605 (1975)).

The three requirements to invoke Younger abstention are: "(1) there must be on-going state judicial proceedings; (2) those proceedings must implicate important state interests; and (3) there must be an adequate opportunity in the state proceedings to raise constitutional challenges." Squire v. Coughlan, 469 F.3d 551, (6th Cir.2006) (citing Sun Ref. & Mktg. Co. v. Brennan, 921 F.2d 635, 639 (6th Cir.1990)). The first prong is easily met by the on-going state proceedings in Louisiana. The second prong is met also, as domestic relations and division of community

---

[7] Plaintiffs' also argue that the second exception to the AIA applies here, but the Court need not analyze that contention because it found the first exception applies.

12

property are important state interests as reflected in the Louisiana Civil Code. In Louisiana, community property has been in existence since that state's colonial days and the notion of community property has not been seriously questioned in modern times. 16 Katherine S. Spaht & Richard D. Moreno, LOUISIANA CIVIL LAW TREATISE § 1.1 (3d ed. 2007). Therefore, the analysis turns on whether the parties to this action would have an adequate opportunity to raise their challenges in the state court proceeding.

Betty Peacock is not a party to the state court action in Louisiana and as such, any constitutional challenges she might have to the state court proceeding cannot be presented. As the spouse of a plan participant, Betty Peacock is entitled to joint and survivor benefits. Ostensibly, any entitlement the Succession may be awarded could divide the potential benefits of Betty Peacock, to which she has a statutory entitlement. Yet, with ERISA, Lewis Peacock cannot deprive Betty Peacock of her statutory right to a portion of his benefits without her consent. See 29 U.S.C. §§ 1055(a) and (2)(A)(i), stating that a joint and survivor annuity is required of ERISA governed plans and that such benefits cannot be waived unless "the spouse of the participant consents in writing..." The Louisiana court cannot determine Betty Peacock's entitlements to her husband's pension and 401(K). There is not any evidence to suggest that Betty Peacock consented to any deprivation of her rights to her husband's ERISA plans. Thus, because Betty Peacock is the appropriate person to assert her rights to her husband's benefits, she must be a party to any action that affects her rights.

Moreover, as discussed supra, the ERISA plans are not parties to the state lawsuit and cannot effectively protect their interests in ensuring that their fiduciary duties to the Peacocks are properly discharged. The state court action for Betty Peacock and the ERISA plans does not

13

afford an adequate opportunity to raise any constitutional challenges.

The Court concludes that the third factor in the Younger analysis has not been satisfied to justify Younger abstention. The Court therefore concludes that this action falls under the exceptions to the AIA and Younger abstention, and under Sixth Circuit precedent, this Court is not required to abstain from hearing this controversy.

## Personal Jurisdiction Over Luneau

Here, the parties dispute whether the Court can exercise personal jurisdiction over Luneau, and whether that jurisdiction is necessary to entertain the action in this Court. The Peacocks assert that personal jurisdiction is a nonissue because the Court can exercise in rem jurisdiction because the funds in question are located in Nashville. The Peacocks further assert that if this Court does not find in rem jurisdiction proper in this case, then the existence of personal jurisdiction over Luneau is warranted under 28 U.S.C. § 1391(b)(2).

Luneau contends that this Court lacks personal jurisdiction over him because he is a lifelong resident and domiciliary of Louisiana; does not own property in Tennessee; and lacks significant business contacts with Tennessee. Luneau notes that Alice Peacock was a lifelong resident and domiciliary of Louisiana; that she lived in Louisiana during her marriage to Lewis Peacock; that she was residing in Louisiana at the time of her death; and that she lacks any significant contacts with Tennessee.

The Plaintiffs bear the burden of making a prima facie showing that the Court possesses jurisdiction over Luneau. Interna Corp. v. Henderson, 428 F.3d 605, 615 (6th Cir.2005). As to the Plaintiffs' contention of in rem jurisdiction under ERISA; "[i]n rem proceedings are usually broadly defined as those actions in which the court must possess or control the property in order

14

to make effective the relief it grants." Commissioner of Ins. of Michigan v. DMB Kyoto Plaza Shopping Center, LLC. et al., 42 F.Supp.2d 726, 731 (W.D.Mich.1998) (citing Penn General Casualty Co. v. Commonwealth of Pennsylvania ex rel. Schnader, 294 U.S. 189, 195 (1935)).

Here, the Plaintiffs are seeking "to obtain injunctive relief from claims against Lewis Peacock's pension and 401(K) plans by the Succession of Alice L. Peacock.." (Docket Entry No. 1, Complaint at ¶ 15). When the judgment seeks an injunction, personal jurisdiction over the defendant is required. "The prayer for an injunction...is in personam and not in rem." Redditt v. Hale, 184 F.2d 443, 447 (8th Cir.1950). As the Fourth Circuit explained:

> [I]njunctive relief ordered in an in rem action would be meaningless because things or property cannot be enjoined to do anything. Likewise, personal jurisdiction need not be exercised in a pure in rem proceeding because, in the simplest of terms, a piece of property and not a person serves as the defendant." See The Moses Taylor, 71 U.S. at 431 ("The distinguishing and characteristic feature of ... [an in rem ] suit is that the...thing proceeded against is itself seized and impleaded as the defendant, and is judged and sentenced accordingly"). In rem actions only require that a party seeking an interest in a res bring the res into the custody of the court and provide reasonable, public notice of its intention to enable others to appear in the action to claim an interest in the res. See Roller v. Holly, 176 U.S. 398, 403-06, 20 S.Ct. 410, 44 L.Ed. 520 (1900).

R.M.S. Titanic v. Haver, 171 F.3d 943, 957 (4th Cir.1999). The Court concludes that this action requires in personam jurisdiction as the relief requested is unavailable in in rem actions.

The Sixth Circuit has held that 29 U.S.C. § 1132(e)(2)[8] can confer nationwide personal

---

[8] Section 1132(e)(2) states:

Where an action under this title is brought in a district court of the United States, it may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found, and process may be served in any other district where a defendant resides or may be found.

15

jurisdiction. Medical Mut. of Ohio v. deSoto, 245 F.3d 561, 567 (6th Cir.2001). The Sixth Circuited reaffirmed its holding that under § 1132, Congress has the power to confer nationwide personal jurisdiction over anyone with minimum contacts to the United States in the district in which the plan is administered. The Sixth Circuit reasoned:

> In United Liberty, we held that the national service of process provision contained in § 78aa of the Securities Exchange Act of 1934 "confer[red] personal jurisdiction in any federal district court over any defendant with minimum contacts to the United States." United Liberty, 985 F.2d at 1330. We based that holding on our rationale in Haile. In Haile we observed that the minimum contacts with the forum state analysis controls states' extra-territorial exercise of jurisdiction in order to protect the defendant's due process rights. Because of the national service of process provision, the district court's exercise of jurisdiction was not "extra-territorial but rather nationwide," and therefore, the "minimum contacts analysis, as a limitation on state extra-territorial power, [was] simply inapposite." Haile 657 F.2d at 826. Instead, in such cases we would apply a minimum contacts with the United States analysis.

deSoto, 245 F.3d at 567. (footnotes omitted).

The threshold question is whether Luneau has minimum contacts with the United States. The answer here is clearly yes, as Luneau is a life long resident of the United States. Thus, the Court possesses jurisdiction over Luneau, and jurisdiction is proper in this Court because the plans are administered within this district.

## Venue

The parties disagree as to whether this action should remain in the Middle District of Tennessee or should be transferred to the Western District of Louisiana. Under the venue statute, a civil action not solely based on diversity may be brought in:

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any

16

> defendant may be found, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b).

First, Luneau is a resident of Avoyelles Parish, a parish within the Western District of Louisiana. (Docket Entry No. 18-2, Luneau Affidavit at ¶ 2). Second, the marriage, divorce and will execution, giving rise to any potential entitlements to ERISA funds occurred in that judicial district. (Docket Entry No. 1. at ¶¶ 8, 9). Thus, this action could have originally been brought in the Western District of Louisiana.

A district court possesses discretion to transfer a civil matter to any other appropriate district: "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404. "The burden rests with the moving party to establish that venue should be transferred." Winnett v. Caterpillar, Inc., 3:06-cv-00235, 2006 WL 1722434, *2 (M.D. Tenn. June 20, 2006). To meet that burden, Luneau must show that the factors supporting transfer weigh heavily in favor of transfer. Id. (citing Van Dusen v. Barrack, 376 U.S. 612, 645-46 (1964)).

> Therefore, in ruling on a motion to transfer under § 1404(a), a district court should consider the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public-interest concerns, such as systemic integrity and fairness, which come under the rubric of "interests of justice." Stewart Organization, Inc. v. Ricoh Corp., 487 U.S. 22, 30 (1988).

Moses v. Business Card Exp., Inc., 929 F.2d 1131, 1137 (6th Cir.1991).

> More specifically, the Court will balance (1) the plaintiff's choice of forum; (2) the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; (3) relative advantages and obstacles to a fair trial; (4) the possibility of the existence of questions arising

17

> in the area of conflict of laws; (5) the advantage of having a local court determine questions of local law; and (6) all other considerations of a practical nature that make a trial easy, expeditious, and economical. Chrysler Credit Corp. v. Country Chrysler, Inc., 928 F.2d 1509, 1516 (10 Cir.1991); Texas Gulf Sulphur Co. v. Ritter, 371 F.2d 145, 147 (10 Cir.1967).

Southern Elec. Health Fund v. Bedrock Services, No. 3:02-CV-00309, 2003 WL 24272405 at *5 (M.D. Tenn. July 23, 2003).

Here, clearly venue is proper in this District, and the only issue is whether Luneau has shown that the Western District of Louisiana is a more convenient forum. First, a plaintiff's choice of forum is given deference. "Unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." Blane v. American Investors, Corp., 934 F. Supp. 903, 907 (M.D.Tenn.1996) (quoting Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947)). Luneau contends that the Plaintiffs' choice should not be entitled to such deference because he alleges the Plaintiffs engaged in forum shopping. The Court however, did not find that the Plaintiffs engaged in forum shopping given that the plans with authority over the benefits at issue are in this District.

Second, because the funds are located in this District, a reasonable inference is that witnesses related to the funds, and proof about the plans are also in this District. Other than himself, Luneau does not name any other potential "Louisiana witness" who would be burdened by a trip to Nashville, Tennessee. "The party seeking the transfer must clearly specify the key witnesses to be called and must make a general statement of what their testimony will cover. . . If a party has merely made a general allegation that witnesses will be necessary, without identifying them and indicating what their testimony will be, the application for transfer will be denied." Bacik v. Peek, 888F.Supp. 1405, 1415 (N.D.Ohio 1993); see also Roberts v. Norfolk Southern

18

Railway Co., No. 05-CV-74484, 2006 WL 1452502 (E.D. Mich. May 24, 2006).

Third, as to the choice of law issue, an ERISA case requires primarily application of federal law. To be sure, Luneau asserts that community property and Louisiana law issues were presented as well as Boggs, the Supreme Court case originating in Louisiana, upon which Plaintiffs rely, tend to favor a transfer. Yet, on questions of law, a district court in a given state is not entitled to deference on that state's laws. Salve Regina College v. Russell, 499 U.S. 225, 233-34 (1991).

Finally, Luneau cites to the added expense of traveling to Tennessee to defend this action given that this issue has been joined in the Louisiana state court. Specifically, Luneau states "as plaintiffs are already defending the state court action in Louisiana, it will pose no additional burden on them to pursue this matter in a Louisiana federal court, rather than one in Tennessee." (Docket Entry No. 17 at p. 12). The Court finds this argument unpersuasive for several reasons. First, any discovery in state court action can be used in this action. The Court will be sensitive to schedule conflicts. Except for trial, there is not any need for the parties to travel to this district. Upon a transfer, the Peacocks would have to travel to Louisiana. Luneau cites to PACE's vast resources as an International Union, but until trial, Luneau would not have to travel this district. Any discovery deposition could be taken by telephone. As mentioned earlier, the Funds and the Peacocks are located in Tennessee and a showing of an individual party's convenience does not warrant a transfer. See Bacik, 888 F.Supp at 1415. "The venue transfer provisions of Section 1404(a) is not meant to merely shift the inconvenience to the plaintiff." Id.

The Court concludes that Luneau has not met his burden to justify the transfer of this action to the Western District of Louisiana or to alter the Plaintiffs' choice of forum.

19

## CONCLUSION

The Court concludes that the Peacocks' action arises under ERISA, and therefore states a claim upon which relief can be granted. The Court also concludes that the present action is not barred under the Anti-Injunction Act nor subject to abstention under Sixth Circuit precedent. This Court possesses personal jurisdiction over Luneau under ERISA's provision for nationwide service of process and Luneau's status as an American citizen. Finally, the Court concludes that the Defendant has not met his burden to warrant a transfer to the Western District of Louisiana. Accordingly, Defendant's motion to dismiss or to transfer (Docket Entry No. 16) should be denied.

An appropriate Order is filed herewith.

**ENTERED** this the 28nd day of August, 2007.

WILLIAM J. HAYNES, JR.
United States District Judge